Daniel S. Mount, Esq. (Cal. Bar No. 77517)
Daniel H. Fingerman, Esq. (Cal. Bar No. 229683)
Jing H. Cherng (Cal. Bar No. 265017)
Mount, Spelman & Fingerman, P.C.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose CA  95110-2740
Phone: (408) 279-7000
Fax:    (408) 998-1473
Email: dmount@mount.com; dfingerman@mount.com;
          gcherng@mount.com

Counsel for Fatdoor Inc.

U.S. District Court
Northern District of California

Fatdoor Inc.

        Plaintiff

v.

IP Analytics LLC and Google Inc.

        Defendants

Case No. _____

**Complaint**

**Demand For Jury Trial**

1  Plaintiff Fatdoor Inc. ("Fatdoor") files this Complaint against IP Analytics LLC ("IPA") and Google Inc. ("Google") and alleges as follows:

**Nature of Action**

1. This is an action concerning ownership interests in certain patents and patent applications (collectively, the "patent rights") under 35 U.S.C. § 261.

**Parties**

2. Fatdoor is a Delaware corporation with its principal place of business in Mountain View, California.

3. Upon information and belief, IPA is a Delaware entity with its principal place of business in Texas.

4. Upon information and belief, Google is a Delaware corporation with its principal place of business in Mountain View, California.

**Jurisdiction & Venue**

5. This court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6. This court has personal jurisdiction over IPA for at least the following reasons. IPA purports to have acquired ownership of certain patent rights with full knowledge that those patent rights belonged to Fatdoor or Fatdoor's predecessor (collectively, "Fatdoor's title"). IPA slandered Fatdoor's title. IPA's purported acquisition of the patent rights and IPA's recordation of documents which slander Fatdoor's title were intentional acts. When IPA did those intentional acts, IPA knew that both Fatdoor and Fatdoor's predecessor resided in California and in this District, so IPA therefore knew that the harm from its conduct would be felt in California and in this District.

7. This court has personal jurisdiction over Google because Google's principal place of business is in Mountain View, California.

8. Venue is appropriate in this District under 28 U.S.C. § 1391 because a substantial part of the events that give rise to this dispute occurred within this District, Fatdoor and Google are residents of this District, and IPA is subject to personal jurisdiction in California and directed its relevant actions toward this District.

**Intradistrict Assignment**

9. Assignment to the San Jose Division is appropriate because a substantial portion of the events underlying this case occurred in Santa Clara County. Fatdoor and Google both have their principal places of business in Mountain View, California, which is in Santa Clara County. District-wide assignment under Civil Local Rule 3-2(c) is not appropriate because this Complaint does not raise any issues concerning infringement or validity of any patent. Rather, this Complaint concerns only the ownership of certain patent rights, which "have the attributes of personal property." 35 U.S.C. § 261.

**General Allegations**

**Fatdoor and Raj Abhyanker**

10. Fatdoor operates an online neighborhood social network website at www.fatdoor.com. This network enables users living close together as neighbors to connect locally, so that they can communicate, share resources and knowledge, as well as safety and crime tips with trusted neighbors in their neighborhood.

11. Since Fatdoor was formed in May 2013, it has invested significantly in research and development (R&D) in the field of neighborhood social networking, geospatial technologies, robotics, and privacy controls.

12. Fatdoor includes co-founders and engineers working as employees or contractors who are experienced and skilled in a wide range of technologies including software development, mobile development, geospatial technologies, robotics, and aeronautics. Fatdoor also includes individuals with degrees from leading universities such as Stanford University, Arizona State University, and University of California at Berkeley.

13. Since May 2013, Fatdoor has filed more than 50 utility patent applications around inventions conceived by its employees, cofounders, and contractors. A number of these patent applications are now published or have matured into issued U.S. patents. For example, Fatdoor owns U.S. Patent 8,732,091 titled "Security in a geo-spatial environment", U.S. Patent 8,738,545, titled "Map based neighborhood search and community contribution", and U.S. Patent 8,775,328 titled "Geo-spatially constrained private neighborhood social network". Fatdoor has commercialized many

of these patented and patent-pending inventions.

14. Raj Abhyanker ("Abhyanker") is a co-founder of Fatdoor, an electrical engineer, and a prolific inventor. Abhyanker invented basic technology underlying all neighborhood social networking. Abhyanker is the inventor or co-inventor of all patents and patent applications at issue in this case.

**Early Patent Applications**

15. On November 22, 2006, Abhyanker filed U.S. Patent Application No. 11/603,442, titled "Map based neighborhood search and community contribution" (the "'442 application"). All subsequent patents and patent applications at issue in this case claim priority, either directly or indirectly, to the '442 application.

16. On January 12, 2007, Abhyanker filed U.S. Patent Application No. 11/653,194, titled "Lodging and real property in a geo-spatial mapping environment" (the "'194 application"). The '194 application is a continuation in part ("CIP") of the '442 application.

17. On March 29, 2007, Abhyanker filed U.S. Patent Application No. 11/731,465, titled "White page and yellow page directories in a geo-spatial environment" (the "'465 application).

18. On July 10, 2007, Abhyanker filed U.S. Patent Application No. 11/827,400, titled "Hot news neighborhood banter in a geo-spatial social network" (the "'400 application").

**Original Fatdoor and Center'd**

19. In or about October 2006, Abhyanker co-founded a corporation named Fatdoor Inc. ("Original Fatdoor") which is not the same corporation as the plaintiff in this case. Original Fatdoor was formed to create a neighborhood social network and to commercialize some of Abhyanker's inventions in that space. Abhyanker worked for Original Fatdoor until in or about September 2007.

20. On January 28, 2008, Abhyanker assigned to Original Fatdoor the '442 application. The assignment of the '442 application did not include CIPs of the '442 application.

21. On January 28, 2008, Abhyanker assigned to Original Fatdoor the '194 application. The assignment of the '194 application did not include CIPs of the '194 application.

22. Upon information and belief, in April 2008, Original Fatdoor changed its name to Center'd Corporation ("Center'd").

23. Upon information and belief, on or about December 10, 2010, Center'd purported to assign to GeoTag, Inc. ("Geotag") the '194, '465, '400, and '267 applications. Upon information and belief, this assignment purported to include:

> any reexaminations, extensions and reissues thereof and any subsequent utility applications, divisionals, continuations and continuation-in-parts and any other applications or patents that claim priority therefrom, including without limitation, any foreign applications or patents corresponding thereto.

24. The December 10, 2010 assignment from Center'd to Geotag was limited, specifying that Center'd was assigning only rights which belonged to Center'd:

> assigns, transfers and conveys to [Geotag] all of [Center'd's] rights, title and interest throughout the world in and to the Assigned Patent Applications, the underlying inventions described therein, and all rights, claims and privileges pertaining to the Assigned Patent Applications, including the right to sue for past, present and future damages.

25. Upon information and belief, on July 31, 2011, Center'd assigned its remaining patent portfolio, including the '442 application, to Coffee Roasting Co. ("Coffee Roasting"). This assignment recites that Center'd and Coffee Roasting had entered into an Asset Purchase Agreement in which Center'd sold certain patents and patent applications to Coffee Roasting. This recital states:

> [Center'd] and [Coffee Roasting] are parties to the Asset Purchase Agreement, dated July 31, 2011 (the "Purchase Agreement") pursuant to which Assignor has sold, and assignee has purchased (a) the patents and patent applications set forth on Schedule A attached hereto (the "Transferred Patents"), (b) patents or patent applications (i) to which any of the Transferred Patents claims [sic] priority, (ii) for which any of the Transferred Patents forms a basis for priority, (iii) that were co-owned applications that incorporate by reference, or are incorporated by reference into, the Transferred Patents, and/or (iv) which are subject to a terminal disclaimer with any of the Transferred Patents; (c) reissues, reexaminations, extensions, continuations, continuations in part, continuing prosecution applications, requests for continuing examinations, divisions, and registrations of any item in any of the foregoing categories (a) and (b); (d) foreign and multinational patents, patent applications and counterparts relating to any item in any of the foregoing categories (a) through (c) , including without limitation, certificates of invention and utility models; (e) rights provided in multinational treaties or conventions for any item in any of the

Complaint    Page 4

foregoing categories (a) through (d); (f) any provisional patent application, patent application and/or patent that is (i) owned by [Center'd], (ii) assigned to [Center'd], and/or (iii) subject to an obligation of assignment to [Center'd], in each case of the foregoing clauses (i) through (iii), as of the date hereof, not otherwise included in any of the foregoing categories (a) through (e); and (g) any items in any of the foregoing categories (b) through (f), whether or not expressly listed as Transferred Patents and whether or not claims in any of the foregoing have been rejected, withdrawn, cancelled, or the like and all other rights appurtenant (including, but not limited to, title and interest and the right to recover for past and future infringement in the United States of America and all other countries and jurisdictions of the world) in and to said patents (hereinafter referred to as the "Patents").

26. The July 31, 2011 assignment from Center'd to Coffee Roasting purports to apply to:

> All rights, title and interest as [Center'd] may possess in, to and under the Patents worldwide, together with (i) all registrations and applications for the Patents, (ii) all income, royalties, damages and payments in respect of the Patents, (iii) the right, if any, to register, prosecute, maintain and defend the Patents before any public or private agency or registrar, and (v) all causes of action (either in law or in equity) and the right to sue, counterclaim and recover for infringement of the Patents (whether arising prior to or subsequent to the date of this Assignment), and the right to fully and entirely stand in place of [Center'd] in all matters related thereto.

27. Upon information and belief, on or about August 1, 2011, Coffee Roasting changed its name to Dealmap Inc. ("Dealmap").

28. Upon information and belief, on or about October 26, 2011, Dealmap assigned certain patent rights to Google. Upon information and belief, this assignment transferred to Google all relevant rights that Dealmap had acquired from Center'd in the July 31, 2011 assignment. In this assignment, Dealmap purported to assign to Google:

> the entire right, title and interest in and to the PATENTS AND PATENT APPLICATIONS [listed in Schedule A to this assignment], and all rights of enforcement thereto, including all rights to sue or recover for the past infringement thereof, and further including the right to file and prosecute in its own name, wherever so permitted by law, patent applications, including corresponding applications, based on any of the PATENTS AND PATENT APPLICATIONS, and to claim priority to any of the PATENTS AND PATENT APPLICATIONS pursuant to the International Convention for the Protection of Industrial Property, the Patent Cooperation Treaty, the European Patent

Complaint                                                                                           Page 5

Convention, and all other treaties of like purposes.

29. The October 26, 2011 assignment from Dealmap to Google also purported to provide that Google "may apply for and receive patents in its own name wherever so permitted by law" and that Dealmap "retains no ownership rights in the patent applications, the patents, the inventions, and the rights transferred to [Google] hereunder."

**Abhyanker's Agreement With Geotag**

30. In October 2013, Abhyanker became aware that Center'd had assigned the '194, '465, and '400 applications to Geotag and that Geotag may have abandoned these applications unintentionally, as the attorney apparently in charge of the files was apparently no longer employed at the law firm of record at the time of the abandonment.

31. On October 28, 2013, Abhyanker contacted Geotag about purchasing Geotag's rights in the abandoned applications, including rights to revive them if they were unintentionally abandoned. Geotag confirmed that the '194, '465, and '400 applications were unintentionally abandoned. Over the next several weeks, Abhyanker had many communications with Geotag, including many emails and meetings.

32. Upon information and belief, Elizabeth Morgan ("Morgan") is a principal and officer of IPA. Upon information and belief, Morgan is married to John Veenstra ("Veenstra"), who is a principal and officer of Geotag. Morgan was a named recipient of the emails between Abhyanker and Geotag and was present during meetings between Abhyanker and Geotag.

33. By November 11, 2013, Abhyanker and Geotag reached an agreement. Under this agreement, Abhyanker would prosecute the '194, '465, and '400 applications and would cause his law firm to advance the USPTO fees associated with this prosecution such as the fees to revive the abandoned applications. In exchange, Abhyanker received a 50% ownership interest in each of the '194, '465, and '400 applications. Geotag confirmed this agreement by, among other things, executing a power of attorney form signed by Veenstra on November 11, 2013, which appointed Abhyanker to prosecute each of one of the '194, '465, and '400 applications and "to transact all business in the United States Patent and Trademark Office connected therewith for" each one of '194, '465, and '400 applications.

34. Morgan was aware of Abhyanker's agreement with Geotag at the time it was formed.

35. Abhyanker performed his agreement with Geotag by successfully petitioning the USPTO to revive the '194, '465, and '400 applications and causing his law firm to advance the legal and government fees relating to the prosecution of those applications.

36. Morgan was aware of Abhyanker's and Geotag's performance of their agreement at the time they performed it.

**Child Applications**

37. On November 13, 2013, Abhyanker emailed to Geotag and Morgan a copy of a child CIP application that Abhyanker intended to file, which would claim priority to or through the applications being revived and which Abhyanker would own.

38. On November 26, 2013, the USPTO granted the petitions to revive the '194, '465, and '400 applications. Abhyanker notified Geotag and Morgan of this via email. In the same email, Abhyanker notified Geotag and Morgan that he was about to file a child application that claimed priority through the revived applications and which Abhyanker would own and also that more continuations and CIPs were being prepared which would also claim priority to or through the revived applications and which Abhyanker would own.

39. Later on November 26, 2013, Geotag responded to Abhyanker's November 26 email, in an email authored by Veenstra. Morgan is a named recipient of Geotag's November 26 email. In Geotag's November 26 email, Geotag congratulated Abhyanker and praised his "good progress".

40. Over the next several weeks, Abhyanker similarly notified Geotag and Morgan of many other continuation and CIP applications that he planned to file and was filing which Abhyanker would own and which claimed priority through one or more of the '194, '465, and '400 applications.

41. On or about January 7, 2014, Abhyanker exercised his power of attorney that Geotag had granted him in connection with the '194, '465, and '400 applications to execute a written assignment of those applications. This January 7, 2014 assignment confirmed Abhyanker's 50% ownership interest in the '194, '465, and '400 applications under his agreement with Geotag.

42. On or about April 23, 2014, Abhyanker recorded the January 7, 2014 assignment.

43. Abhyanker withdrew as Geotag's representative in the prosecution of the '194, '465,

1 and '400 applications on January 31, 2014.

44.     Over several sequential days in mid-January 2014, Abhyanker met with Geotag and Morgan to discuss a potential investment in Fatdoor, Abhyanker's company that was building a neighborhood social network that would exploit the patent rights that Abhyanker was building with his child applications that claimed priority through one or more of the '194, '465, and '400 applications. Morgan was heavily involved in these discussions and was again made aware of Abhyanker's existing and planned child applications that claimed priority through one or more of the '194, '465, and '400 applications.

45.     On December 31, 2013, Abhyanker filed U.S. Patent Application No. 14/144,612, a continuation of the '442 application. This application matured into U.S. Patent 8,738,545, titled "Map based neighborhood search and community contribution", which issued on May 27, 2014 (the "'545 patent").

46.     On January 10, 2014, Abhyanker filed U.S. Patent Application No. 14/151,844, a CIP of the '194 application. This application matured into U.S. Patent 8,732,091, titled "Security in a geo-spatial environment", which issued on May 20, 2014 (the "'091 patent").

47.     On March 10, 2014, Abhyanker filed U.S. Patent Application No. 14/203,531, a CIP of the '194 application. This application matured into U.S. Patent 8,775,328, titled "Geo-spatially constrained private neighborhood social network", which issued on July 8, 2014 (the "'328 patent").

48.     On or about February 6, 2014, Geotag purported to assign to IPA the '194, '465, and '400 applications (defined in this February 6 assignment as the "Patents"). This putative assignment states:

> [Geotag] hereby sells, assigns and transfers unto [IPA], its successors, assigns and legal representatives, the entire right, title and interest in the Patents including domestic and foreign rights, including without limitation: (i) any and all divisionals, continuations, reissues, substitutions, continuations-in-part, extensions, applications, registrations or certificates or renewals that may be issued or granted therefor; (ii) all income, royalties, damages and payments now or hereafter due or payable in respect to the Patents; (iii) all causes of action, either in law or in equity for damages for past, present or future infringement of the Patents, throughout the entire world; and (iv) the right throughout the world to file applications and/or renewals and

obtain registrations in the Patents in [IPA's] own name throughout the world, including, without limitation, all rights of priority.

49. On or about February 8, 2014, IPA recorded the February 6, 2014 assignment.

**Infringement Suit Against Nextdoor**

50. On May 19, 2014, Abhyanker assigned 50% of his ownership interest in his patent rights to Fatdoor.

51. On May 20, 2014, Abhyanker and Fatdoor jointly sued (as co-plaintiffs) Nextdoor.com, Inc. ("Nextdoor") for patent infringement (the "Infringement Suit").

52. In June 2014, Abhyanker assigned to Fatdoor all of his remaining ownership interests in the patent rights.

53. On June 18, 2014, Abhyanker dismissed his individual claims against Nextdoor and withdrew as a party from the Infringement Suit.

54. In Nextdoor's response to Fatdoor's complaint in the Infringement Suit, Nextdoor raised defenses and counterclaims relating to Fatdoor's standing. In so pleading, Nextdoor relies on the putative ownership interests of IPA and Google in the '545 patent, the '091 patent, and the '328 patent.

## Count 1: Declaration of Ownership

55. Fatdoor incorporates by reference all above allegations.

56. Abhyanker has assigned to Fatdoor all right, title, and interest in the '545 patent, the '091 patent, the '328 patent and all other child patents and child applications filed by Abhyanker that claim priority to or through one or more of the '194, '465, and '400 applications. Abhyanker has also assigned to Fatdoor his ownership interest in each of the '194, '465, and '400 applications. Abhyanker has also assigned to Fatdoor all claims he may have and damages he has incurred against anyone who purports to own any interest in the '194, '465, or '400 applications or any interest in the '545 patent, the '091 patent, the '328 patent and all other child patents and child applications filed by Abhyanker that claim priority to or through one or more of the '194, '465, and '400 applications.

57. Fatdoor owns the '545 patent, the '091 patent, the '328 patent and all other child patents and child applications filed by Abhyanker that claim priority to or through one or more of the '194, '465, and '400 applications.

58. Fatdoor owns 50% of each of the '194, '465, and '400 applications.

59. IPA has recorded a putative assignment to itself of "the entire right, title and interest in the" '194, '465, and '400 applications. That putative assignment also purports to assign to IPA "any and all divisionals, continuations, reissues, substitutions, continuations-in-part, extensions, applications, registrations or certificates or renewals that may be issued or granted therefor", which would appear to include the '545 patent, the '091 patent, the '328 patent and other child patents and child applications filed by Abhyanker that claim priority to or through one or more of the '194, '465, and '400 applications. Accordingly, upon information and belief, IPA contends that it owns the '194, '465, and '400 applications and all children that claim priority to or through them. IPA's contention is hostile to Fatdoor's rights.

60. Google has recorded the October 26, 2011 putative assignment to itself, from Dealmap, of "the entire right, title and interest in and to the PATENTS AND PATENT APPLICATIONS" listed in Schedule A to that assignment. This includes the rights that Dealmap (under its former name, Coffee Roasting Co.) purported to acquire from Center'd. According to Coffee Roasting's putative assignment dated July 31, 2011, this included "All rights, title and interest as [Center'd] may possess in, to and under the" patents and patent applications listed in that assignment. It also purported to include "reissues, reexaminations, extensions, continuations, continuations in part, continuing prosecution applications, requests for continuing examinations, divisions, and registrations" of such patents and patent applications. Accordingly, upon information and belief, Google contends that it owns children that claim priority to or through the '194, '465, and '400 applications. Google's contention is hostile to Fatdoor's rights.

61. IPA's and Google's contentions of ownership have harmed Fatdoor and clouded Fatdoor's title in the '545 patent, the '091 patent, the '328 patent and all other child patents and child applications filed by Abhyanker that claim priority to or through one or more of the '194, '465, and '400 applications.

62. An actual and justiciable controversy exists over the ownership of the '194, '465, and '400 applications as well as over the '545 patent, the '091 patent, the '328 patent and all other child patents and child applications filed by Abhyanker that claim priority to or through one or more of the

'194, '465, and '400 applications.

63. Fatdoor is entitled to a declaration that it owns 50% of each of the '194, '465, and '400 applications.

64. Fatdoor is entitled to a declaration that it owns the '545 patent, the '091 patent, the '328 patent and all other child patents and child applications filed by Abhyanker that claim priority to or through one or more of the '194, '465, and '400 applications.

### Count 2: Slander of Title

65. Fatdoor incorporates by reference all above allegations.

66. Fatdoor owns the '545 patent, the '091 patent, the '328 patent and all other child patents and child applications filed by Abhyanker that claim priority to or through one or more of the '194, '465, and '400 applications as well as 50% of the '194, '465, and '400 applications.

67. The recordation system of the U.S. Patent & Trademark Office ("USPTO") is intended to serve a public notice function for ownership of patent rights. *See* 35 U.S.C. § 261. All documents recorded with the USPTO (including all statements made within each recorded document) are published to the general public.

68. By recording the February 6, 2014 assignment described above, IPA published statements that slander Fatdoor's 50% ownership interest in the '194, '465, and '400 applications.

69. By recording the February 6, 2014 and the October 26, 2011 assignments described above, Google and IPA have published statements that slander Fatdoor's title to the '545 patent, the '091 patent, the '328 patent and all other child patents and child applications filed by Abhyanker that claim priority to or through one or more of the '194, '465, and '400 applications.

70. The statements made in IPA's and Google's recorded assignments are untrue to the extent they impugn Fatdoor's ownership of the '545 patent, the '091 patent, the '328 patent and all other child patents and child applications filed by Abhyanker that claim priority to or through one or more of the '194, '465, and '400 applications and/or Fatdoor's 50% ownership of the '194, '465, and '400 applications.

71. IPA knew at all relevant times that Fatdoor owns the '545 patent, the '091 patent, the '328 patent and all other child patents and child applications filed by Abhyanker that claim priority to

1 or through one or more of the '194, '465, and '400 applications as well as 50% of the '194, '465, and
2 '400 applications.

3     72.      Upon information and belief, Google acted with reckless disregard for Fatdoor's
4 ownership of the child patents and child applications filed by Abhyanker that claim priority to or
5 through one or more of the '194, '465, and '400 applications, including those child applications now
6 matured into the '545 patent, the '091 patent, the '328 patent, when Google filed at least some of the
7 recordations of the assignment described above on or around January 29, 2014.

8     73.      IPA and Google knew or should have known that the general public relies on the
9 USPTO's recordation system for information concerning ownership of patent rights and, therefore,
10 that their statements would be relied upon by the general public and by infringers of Fatdoor's patent
11 rights, and that such reliance would cause harm to Fatdoor, including financial losses.

12     74.      Fatdoor suffered immediate and direct harm when Nextdoor acted in reliance on IPA's
13 and Google's statements. Fatdoor has been harmed by Nextdoor's contentions that arise out of the
14 ownership contentions published by IPA and Google. For example, Fatdoor has expended money on
15 costs such as attorney fees to deal with Nextdoor's contentions.

16     75.      IPA's and Google's conduct was a substantial factor in causing Fatdoor's harm.

17     76.      Fatdoor was harmed in an amount to be proven at trial. As an additional remedy for
18 slander of title, Fatdoor is entitled to a declaration that it owns the '545 patent, the '091 patent, the
19 '328 patent and all other child patents and child applications filed by Abhyanker that claim priority to
20 or through one or more of the '194, '465, and '400 applications.

21     **Count 3: Cancellation of Written Instruments**

22     77.      Fatdoor incorporates by reference all above allegations.

23     78.      Fatdoor seeks cancellation of written instruments pursuant to Cal. Civ. Code § 3412.

24     79.      The assignment recorded by IPA has created a cloud over Fatdoor's 50% ownership
25 interest in the '194, '465, and '400 applications.

26     80.      The assignments recorded by IPA and Google have created a cloud over Fatdoor's
27 ownership of the '545 patent, the '091 patent, the '328 patent and all other child patents and child
28 applications filed by Abhyanker that claim priority to or through one or more of the '194, '465, and

'400 applications.

81. The clouds over Fatdoor's ownership of its patent rights has harmed Fatdoor and has created a reasonable apprehension that, if left outstanding, the clouds over Fatdoor's ownership of its patent rights may cause further serious injury to Fatdoor.

82. Fatdoor is entitled to cancellation or partial cancellation of IPA's and Google's assignments to the extent they impugn Fatdoor's 50% ownership of the '194, '465, and '400 applications and to the extent they impugn Fatdoor's ownership of the '545 patent, the '091 patent, the '328 patent and all other child patents and child applications filed by Abhyanker that claim priority to or through one or more of the '194, '465, and '400 applications.

## Count 4: Unjust Enrichment

83. Fatdoor incorporates by reference all above allegations.

84. To the extent that IPA and Google claim any ownership or other interests in the '545 patent, the '091 patent, the '328 patent or any other child patents and child applications filed by Abhyanker that claim priority to or through one or more of the '194, '465, and '400 applications, IPA and Google have been unjustly enriched by Fatdoor's and Abhyanker's industrious hard work to create those patent rights and commercialize the inventions. Abhyanker has assigned ownership of all such rights to Fatdoor.

85. Fatdoor and Abhyanker have invested a significant amount of money to enlarge Fatdoor's patent portfolio, such as by prosecuting the '545 patent, the '091 patent, the '328 patent and all other child patents and child applications filed by Abhyanker that claim priority to or through one or more of the '194, '465, and '400 applications and by paying USPTO fees and investing hundreds of hours of legal time associated with preparation and prosecution of those patents and applications. Abhyanker has assigned to Fatdoor all such rights and investments, as well as the right to recover for claims relating to them. If IPA or Google claim any ownership interest in any of those patents or applications, then to that extent, IPA and Google have been unjustly enriched by Fatdoor's investments.

86. Fatdoor is entitled to recover all the enrichment that unjustly inured to IPA and/or to Google in connection with the '194, '465, and '400 applications as well as the '545 patent, the '091

patent, the '328 patent and all other child patents and child applications filed by Abhyanker that claim priority to or through one or more of the '194, '465, and '400 applications.

## **Demand For Judgment**

Fatdoor demands judgment as follows:

1. A declaration that Fatdoor owns 50% of the '194, '465, and '400 applications.

2. A declaration that Fatdoor owns the '545 patent, the '091 patent, the '328 patent and all other child patents and child applications filed by Abhyanker that claim priority to or through one or more of the '194, '465, and '400 applications.

3. Cancellation or partial cancellation of IPA's assignment to the extent it impugns Fatdoor's 50% ownership of the '194, '465, and '400 applications.

4. Cancellation or partial cancellation of IPA's and Google's assignments to the extent they impugn Fatdoor's ownership of the '545 patent, the '091 patent, the '328 patent and all other child patents and child applications filed by Abhyanker that claim priority to or through one or more of the '194, '465, and '400 applications.

5. Disgorgement of all unjust enrichment conferred upon IPA as a result of any ownership interest it may have in the '194, '465, and '400 applications to the extent it impugns Fatdoor's 50% ownership of the '194, '465, and '400 applications.

6. Disgorgement of all unjust enrichment conferred upon IPA and/or Google as a result of any ownership interest they may have in the '545 patent, the '091 patent, the '328 patent and all other child patents and child applications filed by Abhyanker that claim priority to or through one or more of the '194, '465, and '400 applications.

7. Damages in an amount to be proved at trial.

8. All other relief that the court deems proper.

Date: August 25, 2014            Mount, Spelman & Fingerman, P.C.
                                         /s/ Daniel H. Fingerman
                                 Counsel for Fatdoor Inc.

**Demand For Jury Trial**

Fatdoor demands a jury trial on all issues so triable.

Date: August 25, 2014                              Mount, Spelman & Fingerman, P.C.
                                                                   /s/ Daniel H. Fingerman
                                                   Counsel for Fatdoor Inc.